ELIAS B. OLIVER *et al.*

*v.*

THOMAS CROSWELL.

1. REDEMPTION BY A JUDGMENT CREDITOR — *of the manner of the sale, in consummation of the redemption.* Where two lots of ground have been sold together, under an execution, a judgment creditor, who seeks to redeem from such sale, must cause the lots to be sold together, under his judgment, as they were sold under the original judgment, in order to consummate his redemption. If, after paying the redemption money, he causes the lots to be sold separately, and bids them in for a less sum, he will be considered as having abandoned his redemption, and made his sale wholly independent of it.

2. SAME — *how soon after paying the redemption money, the sale should be had.* Where a judgment creditor, who had paid the redemption money and levied his execution, delayed making the sale for two and a half years, it was thought questionable whether the redeeming creditor could be permitted to wait so long a time before proceeding with his own sale, — whether the policy of the statute would not require him to proceed at once with his sale, in order that other judgment creditors might in turn exercise their right of redemption. But the question is not decided.

3. OFFER TO PERFORM — *when unavailing.* Where, upon the hearing of a cause in chancery, upon bill filed for a specific performance of a contract for the sale of land, the defendant offers to convey upon payment of a balance of the purchase money which remained unpaid, when it appears, that, since the filing of the bill, he has conveyed to a person who is not a party to the suit, his offer to perform will be regarded as frivolous, and will not affect the right of the complainant to a decree for so much of the purchase money as he has paid.

4. SPECIFIC PERFORMANCE — *subsequent purchasers with notice.* Where a subsequent purchaser of land, with notice of a prior contract of sale by his

grantor, pending a suit by the prior purchaser, against his vendor and the subsequent purchaser, for a specific performance, conveys the land to another, who is not a party to the suit, he will be considered as holding the money in place of the land, and the complainant will be entitled to a money decree against him for the purchase money paid on the original contract.

5. Same — *what is a sufficient performance by the purchaser, in the payment of taxes.* Where a purchaser of land, who is seeking a specific performance by his vendor, was bound by his contract of purchase to pay the taxes on the premises, instead of paying them, allows the property to go to sale and bids it off himself, but seeks or intends to obtain no advantage from the tax sale, that will be regarded as only an indirect mode of paying the taxes, and a sufficient performance on his part in that regard.

6. Tax sale — *who may claim title thereunder.* Where a purchaser of land agrees to pay the taxes on the premises, but instead of doing so permits them to go to sale and bid them in himself, neither he nor any person claiming under him can set up such tax sale as title against the vendor.

Appeal from the Circuit Court of Livingston county; the Hon. Charles R. Starr, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. Wood & Long, for the appellants.

Mr. A. E. Harding, for the appellee.

Mr. Justice Lawrence delivered the opinion of the Court:

On the 20th of December, 1859, Oliver, one of appellants, sold to Croswell, the appellee, two town lots, receiving therefor the sum of three hundred dollars in drugs, and agreeing to receive the residue of the purchase money in the same way, and to order the drugs as he should require them. This contract was recorded February 5th, 1861. On the 20th of May, 1862, Oliver sold and deeded the premises to the appellant, Streamer. Before Croswell recorded his contract, Sarah H. Blong recovered a judgment against Oliver, which was a lien on these lots, and, on the 16th of February, 1861, they were sold under execution and purchased by Croswell. On the 12th of September, 1862, Streamer obtained a judgment against Oliver, and on the next day redeemed these lots, as a judgment creditor, but did not then proceed to sell under his execution.

On the 9th of September, 1863, Croswell filed his bill for specific performance against Oliver and Streamer. The defendants answered on the 22d of September, 1864, and Streamer states in his answer, that, on the 12th of September, 1864, he conveyed the premises to one Olive F. Boyer, in pursuance of a contract of sale made March 10, 1863. It will be observed that this conveyance was made by Streamer nearly a year after the bill was filed, and a few days before filing his answer. The court decreed the return of the $300 by Oliver and Streamer, and they appealed.

It appeared on the hearing, that, on the 13th of April, 1865, Streamer sued out a *vend. ex.* on his judgment against Oliver, under which the sheriff, on the 6th of May, 1865, sold the premises to Streamer, and made him a deed.

This was long subsequent to the filing of the answer. It is urged by the appellants, that Streamer obtained by his redemption from the Blong judgment, and by this sale, a title paramount to the equitable title of Croswell, as the Blong judgment was obtained before the contract between Oliver and Croswell was recorded. But we find, on an examination of the record, that the two lots were sold together, under the Blong judgment, for the sum of sixty-three dollars and forty-nine cents, and, after Streamer redeemed them under his execution, he ordered it to be returned. When he sued out his *venditioni exponas*, more than two years and a half after his redemption, the lots were sold separately by the sheriff, and bought by Streamer at sixteen dollars each. When this sale was made, the legal title was already in Streamer, by his deed from Oliver of May 20th, 1862. Without considering the question of merger, it is evident that the sale under Streamer's execution on the 6th of May, 1865, was not in pursuance and consummation of his former redemption. That was abandoned. In order to proceed under his redemption, it would have been necessary for Streamer to cause the lots to be sold together, as they had been sold under the Blong judgment, and the redemption money paid by him would have been, under the statute, the amount of his bid. Instead of doing this, he caused the lots to be sold

separately, and bid them in at a less sum. This was a sale wholly independent of the redemption, and may have misled Croswell, if he was present, and have prevented him from bidding with a view of saving his title, which he might have been disposed to do if the sale had been made in pursuance of the redemption. We also consider it questionable whether a judgment creditor who has redeemed can be permitted to wait two and a half years before proceeding with his own sale; whether the policy of the statute would not require him to proceed at once with his sale, after redeeming, in order that other judgment creditors may, in turn, exercise their right of redemption. But as this point has not been argued, we express no opinion upon it, but merely say, that, in the case before us, all the circumstances show that the sale of May, 1865, was so conducted as to prevent its relating back to the redemption of September, 1863, and was in fact an abandonment of that redemption. The title relates only to the judgment of Streamer, which was junior to Croswell's claim.

It is also urged, that the defendants offered, on the hearing, to make a deed to the complainant, upon his furnishing the residue of the drugs. This was frivolous, as Streamer had shortly before conveyed the premises to a person not a party to the suit.

It is also urged, that the court could not properly render a money decree against Streamer, who had made no contract with Croswell. The equity of the decree, so far as relates to this objection, arises from the fact, that Streamer bought of Oliver, with notice of Croswell's prior purchase, and, after this bill was filed and summons served, he very improperly conveyed the premises to a person not a party to the suit. He must, therefore, be considered as holding the money in place of the land. If courts of equity could not reach the purchase money after parties had conveyed *pendente lite*, this species of remedy would become almost worthless.

It is further urged, that the complainant was himself in default, in not having paid the taxes as he had agreed to do by his contract. Instead of paying them, he allowed the lots to

go to sale and bid them off himself. This was really but an indirect mode of paying the taxes. Neither Croswell, nor any person claiming under him, could set up this tax sale as title against Oliver. There is no proof that Croswell sought or intended to obtain any advantage from the tax sale. The evidence also shows, that Croswell had offered to furnish the residue of the drugs, and that Oliver had always got them when he ordered them.

We think the decree is just, and should be affirmed.

*Decree affirmed.*